UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ROBERTO ELORREAGA, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>ROCKWELL AUTOMATION, INC., et al.,<br><br>Defendants. | Case No. 21-cv-05696-HSG<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 78 |

Pending before the Court is the motion to dismiss filed by Defendants General Electric Company and ViacomCBS. Dkt. No. 78. The Court finds this matter appropriate for disposition without oral argument and the matter is deemed submitted. *See* Civil L.R. 7-1(b). For the reasons detailed below, the Court **GRANTS IN PART** and **DENIES IN PART** the motion.

I. **BACKGROUND**

In September 2020, Roberto Elorreaga and Rosemary Elorreaga initially filed this asbestos action in San Francisco Superior Court against approximately twenty-five Defendants. *See* Dkt. No. 1-1. Defendants then removed the case to federal court. *See* Dkt. No. 1-1. Roberto Elorreaga died in October 2021, Dkt. No. 55, and his family is now pursuing this case, *see* Dkt. No. 66 ("SAC").[1] As relevant to this motion, Plaintiffs allege that Mr. Elorreaga was exposed to asbestos from Defendants' products, and that he died from malignant pleural mesothelioma as a result. *See, e.g.*, *id.* at ¶¶ 3, 8–18. Plaintiffs allege six causes of action against Defendants, including loss of consortium under federal maritime law. *See id.* at ¶¶ 88–91. Plaintiffs also seek punitive

---

[1] Plaintiffs are Rosemary Elorreaga, individually and as successor-in-interest to Roberto Elorreaga; Robert Paul Elorreaga; Richard Andrew Elorreaga; and Ronald Edward Elorreaga. *See generally* SAC.

damages. *See id.*, "Damages."

The parties appear to agree that Mr. Elorreaga's alleged asbestos exposure occurred while he was serving in the United States Navy aboard the USS Rupertus and USS Cowell. *See* Dkt. No. 78 ("Mot.") at 3; Dkt. No. 78-2, Ex. C at 59; *id.* at Ex. D at 64, 70–71; Dkt. No. 85 at 3–4. Defendants now move to dismiss Plaintiffs' request for punitive damages and loss of consortium damages, arguing that they are precluded under federal maritime law.[2] *See* Mot. at 2.

## II. LEGAL STANDARD

To survive a Rule 12(b)(6) motion to dismiss, a plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when a plaintiff pleads "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In reviewing the plausibility of a complaint, courts "accept factual allegations in the complaint as true and construe the pleadings in the light most favorable to the nonmoving party." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008). Nevertheless, courts do not "accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Secs. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (quoting *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001)).

## III. DISCUSSION

### A. Maritime Causes of Action

At bottom, the parties disagree about what damages are available under federal maritime law. Defendants argue that the Supreme Court held in *Miles v. Apex Marine Corp.*, 498 U.S. 19, 37 (1990), that seamen may not recover non-pecuniary damages, regardless of whether the claim arises under general maritime law or a federal maritime statute. *See* Dkt. No. 86 ("Rep.") at 4, 7–

---

[2] In reviewing the parties' briefs, it is apparent that the parties have not consistently complied with Civil L.R. 3-4(c), which requires 12-point type for all text, including footnotes. The Court expects the parties to scrupulously comply with the Local Rules and the Court's standing orders in all future filings. To the extent the parties fail to do so in future, the Court may strike the brief in its entirety.

2

9. Plaintiffs respond that their requests for punitive damages and loss of consortium damages are based on general maritime law. *See* Dkt. No. 85 ("Opp.") at 1–2, & n.3. Plaintiffs further argue that in the years since *Miles*, the Supreme Court has held that under certain circumstances injured seamen may recover non-pecuniary damages under general maritime law. *See id.* at 8–13.

A brief overview of federal maritime law is necessary to frame the parties' arguments. Historically, federal courts have developed an "amalgam of traditional common-law rules, modifications of those rules, and newly created rules that forms the general maritime law." *The Dutra Grp. v. Batterton*, 139 S. Ct. 2275, 2278 (2019). Beginning in the 20th century, Congress began enacting federal maritime statutes to provide more adequate protection for seamen. *See Miles*, 498 U.S. at 23, 27. In 1920, for example, Congress enacted the Jones Act, which created a statutory cause of action for seamen to sue their employers for negligence. *See Atlantic Sounding v. Townsend*, 557 U.S. 404, 415–416 (2009). However, the Jones Act did not explicitly eliminate the pre-existing causes of action or remedies under general maritime law. *Id.* Rather, an injured seaman has "a choice of actions," and may "elect" to proceed under the Jones Act. *Id.* As such, plaintiffs can, and often do, bring claims under both general maritime law and federal maritime statutes. *See id.* at 33. This dual system has led to questions about what relief is available to plaintiffs.

The Supreme Court first addressed the conflict between remedies available under general maritime law and federal maritime statutes in *Miles v. Apex*. In *Miles*, a seaman was stabbed repeatedly and killed by a fellow seaman while aboard a ship docked in Washington. 498 U.S. at 21–22. The decedent's mother brought a wrongful death claim against the ship's owners and operators under both general maritime law and the Jones Act. 498 U.S. at 21–22. She alleged negligence under the Jones Act and breach of the warranty of seaworthiness under general maritime law, claiming the defendants had "hir[ed] a crew member unfit to serve." *Id.* at 21. One of the questions before the Court was whether the plaintiff could recover for loss of society and punitive damages based on her general maritime law claim, even though non-pecuniary damages are precluded under the Jones Act. *Id.* at 21–22, 32.

In holding that Plaintiff could not recover such damages, the Supreme Court held that it

3

would be "inconsistent with our place in the constitutional scheme" to award greater damages for claims brought under causes of action created by judges under general maritime law than for claims brought under the Jones Act. *Id.* at 31–33 ("Congress has spoken directly to the question of recoverable damages on the high seas, and when it does speak directly to a question, the courts are not free to 'supplement' Congress' answer so thoroughly that the Act becomes meaningless." (quotation omitted)); *see also id.* at 27 ("Congress retains superior authority in these matters, and an admiralty court must be vigilant not to overstep the well-considered boundaries imposed by federal legislation."). The Court emphasized the need to "restore a uniform rule applicable to all actions for the wrongful death of a seaman, whether under [The Death on the High Seas Act ("DOHSA")], the Jones Act, or general maritime law." *Id.* at 33.

Subsequent decisions interpreted *Miles* broadly, holding that non-pecuniary damages were *never* allowed in wrongful death cases, regardless of whether they were brought under general maritime law or maritime statutory law. *See, e.g.*, *Davis v. Bender*, 27 F.3d 426, 430 (9th Cir. 1994). Defendants appear to rely on this line of reasoning in arguing that non-pecuniary damages should be precluded here. *See* Mot. at 2; Rep. at 10.

In *Atlantic Sounding v. Townsend*, however, the Supreme Court clarified the scope of *Miles*. There, an injured seaman sued his employer for willful failure to provide maintenance and cure under general maritime law, *i.e.*, "the vessel owner's obligation to provide food, lodging, and medical services to a seaman injured while serving the ship." *See* 557 U.S. at 407–08. The plaintiff sought punitive damages. *Id.* The Supreme Court held that punitive damages are recoverable in maintenance and cure claims under general maritime law. *Id.* at 407–08, 419–20 (confirming that the reasoning in *Miles* "remains sound," but did not involve maintenance and cure claims). *Id.* at 419–20.

The Court identified a two-step framework for determining whether a plaintiff can seek certain relief under general maritime law. *See id.* at 407. *First*, the court must consider whether the relief sought has been historically available under general maritime law. *See id. Second*, the court must determine whether any statute explicitly precludes the requested relief. *See id.* At step one, the Supreme Court concluded that historically courts have awarded punitive damages

4

for maintenance and cure claims under general maritime law. *See id.* at 409. The Court emphasized the long history of awarding punitive damages prior to the Jones Act, including damages awards with "some punitive element" in maintenance and cure claims. *Id.* at 409–10, 411–14. At step two, the Court recognized that punitive damages are unavailable under the Jones Act, but noted that the statute was passed to expand—not limit—recovery for seamen. *Id.* at 415. The Supreme Court concluded that there was nothing in the case law or text of the Jones Act that precluded the recovery of punitive damages for maintenance and cure claims under general maritime law. *Id.* at 418.

Most recently, in *The Dutra Group v. Batterton*, the Supreme Court confirmed this framework, adding a third step based on whether "policy grounds" nevertheless compel the requested damages. 139 S. Ct. at 2283. The Court further clarified that the analysis about what relief is available is "based on the particular claims involved." *Id.* at 2278. This Court therefore applies this three-step framework to determine whether Plaintiffs' request for punitive damages and loss of consortium are precluded in this case.[3]

### i. Punitive Damages

Plaintiffs suggest that the Supreme Court's ruling in *Atlantic Sounding* is dispositive here, and that "punitive damages are clearly recoverable in this case." *See* Opp. at 8–13. Plaintiffs point out that in *Atlantic Sounding* the Court held that punitive damages remain available for maintenance and cure claims "under the appropriate factual circumstances," and argue that they should be available here. *See id.* at 8 (citing *Atlantic Sounding*, 557 U.S. at 415). Plaintiffs do not attempt to address the framework in *Atlantic Sounding*. Instead, they state that there is "uncertainty in this area of the law," and urge that "until some binding authorities clarify this area of the law" the Court should find that punitive damages are available here. *Id.* at 10. The Court is not persuaded.

As explained above, the Supreme Court in *Atlantic Sounding* held that punitive damages

---

[3] To the extent Plaintiffs argue that their claims do not arise under the Jones Act, *see* Opp. at 5–7, this does not appear to be disputed, *see* Rep. at 5. Rather, the question is what relief is available to Plaintiffs under general maritime law. As discussed above, the Supreme Court has provided some guidance in answering this question.

5

may be available for certain claims, but not for *all* claims under general maritime law. The Supreme Court's opinion in *The Dutra Group v. Batterton* further underscores this nuance.

In *Batterton*, a seaman who was injured while working as a deckhand and crew member sought punitive damages for an unseaworthiness claim, arguing "that he was injured as a result of the unseaworthy condition of the vessel." 139 S. Ct. at 2278. Unseaworthiness claims arise under general maritime law, not federal statute. *See id.* at 2283–84. The Supreme Court nevertheless held that punitive damages were unavailable for unseaworthiness claims. *See id.* at 2283–87. In applying the *Atlantic Sounding* framework, the Court concluded that there was no historical basis for allowing punitive damages for unseaworthiness claims. *Id*. at 2279–80. At step one of the *Atlantic Sounding* framework, the Court concluded that punitive damages were not "traditionally available for breach of the duty of seaworthiness." *See id.* at 2283. The Court explained that the unseaworthiness cases the plaintiff cited appeared to award strictly compensatory—not punitive—damages. *See id.* at 2283–84. Although the Supreme Court acknowledged that punitive damages were historically available under the common law generally, this was not enough. *Id.* at 2284. Unlike the maintenance and cure claims in *Atlantic Sounding*, the Supreme Court found that there was no evidence that courts "traditionally allow[ed] recovery of punitive damages" for unseaworthiness claims. *See id.*

The Court also considered whether this "novel remedy" would be "required to maintain uniformity with Congress's clearly expressed policies" under maritime statutory law. *Id.* at 2284–85. But the Court found it significant that non-pecuniary damages are not available under the Jones Act. *Id.* Finally, the Court rejected the plaintiff's arguments that punitive damages should still be permitted on "policy grounds," instead emphasizing the importance of ensuring a uniform maritime law. *See id.* at 2286 ("[I]t would exceed our current role to introduce novel remedies contradictory to those Congress has provided in similar areas.").

Plaintiffs argue that *Miles* and *Batterton* are distinguishable because in those cases the plaintiffs also brought statutory claims against their employers. *See* Opp. at 12–13. Plaintiffs contend that the Court is therefore free "to decide whether punitive damages are appropriate," without regard for the limitations of any maritime statutes. *See id.* at 13. However, the Supreme

6

1 Court in *Miles* and *Batterton* did not limit the holdings of the cases in this way. As the Ninth

2 Circuit has noted, "there is nothing in *Miles'* reasoning to suggest that the decision turned upon the

3 identity of the defendant." *See, e.g.*, *Davis*, 27 F.3d at 430. And although the Supreme Court has

4 expressed concern for maintaining uniformity in maritime claims, the Court has not conditioned

5 its conclusions on whether a plaintiff has brought a parallel statutory claim. Rather, the Court has

6 suggested a reluctance to expand general maritime law at all, given "the increased role that

7 legislation has taken over the past century of maritime law." *Batterton*, 139 S. Ct. at 2286, & n.9

8 ("[W]e think it wise to leave to the political branches the development of novel claims and

9 remedies."); *accord Mullinex v. John Crane Inc.*, No. 418CV00033RAJDEM, 2022 WL 2110693,

10 at *3–4 (E.D. Va. June 10, 2022) (applying *Batterton* framework to negligence claims brought by

11 plaintiffs against third-party manufacturers for death of seaman from asbestos exposure); *Spurlin*

12 *v. Air & Liquid Sys. Corp.*, 537 F. Supp. 3d 1162, 1179–81 (S.D. Cal. 2021) (same).

13 In any event, Plaintiffs argue that the Court should apply *Atlantic Sounding* here. *See* Opp.

14 at 8–9, 12–13. But Plaintiffs do not offer any evidence that punitive damages were historically

15 available for any of their claims under general maritime law. *See* SAC at ¶¶ 30–87 (asserting

16 negligence and strict liability claims). As the Supreme Court has stated, this dearth of historical

17 evidence "is practically dispositive." *Batterton*, 139 S. Ct. at 2275. In short, Plaintiffs have

18 offered no evidence that punitive damages were historically available for their specific claims, or

19 that there is any other reason why the Court should find them available under general maritime

20 law under these circumstances. The Court therefore **GRANTS** Defendants' motion on this basis.

21 *Accord Rogers v. A.O. Smith Corp.*, No. CV 19-573, 2022 WL 1488039, at *11 (E.D. Pa. May 10,

22 2022); *Mullinex v. John Crane Inc.*, No. 4:18-CV-00033, 2021 WL 8129699, at *2 (E.D. Va. Oct.

23 5, 2021), *report and recommendation adopted*, No. 418CV00033RAJDEM, 2022 WL 1607907

24 (E.D. Va. May 20, 2022); *Spurlin*, 537 F. Supp. 3d at 1179–81.

25     **ii. Loss of Consortium**

26 Defendants argue that damages for loss of consortium are unavailable to a decedent's

27 family under general maritime law, such that the Court should dismiss Plaintiffs' claim. *See* Mot.

28 at 5–6; Rep. at 10. As discussed above, the Supreme Court in *Miles* held explicitly that a plaintiff

may not recover for loss of society in wrongful death actions under general maritime law. *Miles*, 498 U.S. at 33. And consistent with *Miles*, the Ninth Circuit has similarly held that actions for loss of consortium are precluded both under the Jones Act and under general maritime law.[4] *Smith v. Trinidad*, 992 F.2d 996 (9th Cir. 1993). Defendants submit that *Smith* remains good law, and precludes Plaintiffs' loss of consortium claim here. *See* Rep. at 10.

Plaintiffs do not address the Ninth Circuit's opinion in *Smith* directly. *See* Opp. at 13–16. Rather, in a footnote Plaintiffs suggest that the reasoning of *Smith*—and *Miles*—did not survive the Supreme Court's opinion in *Atlantic Sounding*. *See id.* at 9, & n.8. However, the Supreme Court itself confirmed in *Atlantic Sounding* that "[t]he reasoning of *Miles* remains sound." *See Atlantic Sounding*, 557 U.S. at 420. And other Circuits have continued, even after *Atlantic Sounding*, to find that loss of consortium damages are unavailable under general maritime law. *See, e.g.*, *McBride v. Estis Well Serv., L.L.C.*, 768 F.3d 382, 391 (5th Cir. 2014) (en banc) (finding damages still limited under both Jones Act and general maritime law to pecuniary damages); *Doyle v. Graske*, 579 F.3d 898, 906–08 (8th Cir. 2009), *as amended* (Oct. 21, 2009) (holding "there is no well-established admiralty rule . . . authorizing loss-of-consortium damages as a general matter").

This Court is bound to follow Ninth Circuit law. The Ninth Circuit has cautioned that only in cases of "clear irreconcilability" can district courts "consider themselves bound by the intervening higher authority and reject the prior opinion of [the Ninth Circuit] as having been effectively overruled." *Miller v. Gammie*, 335 F.3d 889, 899–900 (9th Cir. 2003) (en banc). "This is a high standard," which "requires [the district court] to look at more than the surface conclusions of the competing authority." *Rodriguez v. AT & T Mobility Servs. LLC*, 728 F.3d 975, 979 (9th Cir. 2013) (quotation omitted); *accord Close v. Sotheby's, Inc.*, 894 F.3d 1061, 1074 (9th Cir. 2018) (holding that even where a prior panel opinion's "reasoning would be suspect today, [] it is not clearly irreconcilable with intervening higher authority"). Plaintiffs have not made any effort to explain how this high standard is met here. The Supreme Court has continued to cite

---

[4] As Plaintiffs acknowledge, loss of consortium claims "encompasses loss of society." *See* Opp. at 14 (quoting *Barrette v. Jubilee Fisheries, Inc.*, 2011 WL 3516061 (W.D. Wa. Aug. 11, 2011)).

8

*Miles*, even as it has laid out a framework for resolving other conflicts between general maritime law and maritime statutory law. *Smith* is thus not clearly irreconcilable with *Atlantic Sounding* or *Batterton*.[5]

Accordingly, the Court continues to apply *Smith*, as it must, and **GRANTS** the motion to dismiss on this basis.

### B. California Causes of Action

Lastly, Defendants briefly argue in their motion to dismiss that Plaintiffs' California claims for negligence and strict liability should also be dismissed as redundant because Plaintiffs have brought the same claims under maritime law. *See* Mot. at 5. In their opening brief, Defendants offer no more than a sentence of analysis to buttress their request to dismiss these allegedly redundant causes of action. *Id.* In reply, Defendants urge that all Mr. Elorreaga's exposure "were ship-based exposures." *See* Rep. at 11. Plaintiffs appear to agree that these causes of action may be duplicative, and that they cannot recover under both California law and maritime law for these claims. *See* Opp. at 17. However, Plaintiffs argue that it is premature to dismiss the California claims because they do not yet know for certain whether Mr. Elorreaga's asbestos exposure occurred while serving on Navy ships at sea or on land while working at the shipyard. *See id.* Plaintiffs contend that further factual development is necessary to confirm whether maritime law in fact applies to this case. *Id.* Defendants suggest that "based on the current facts, even while in port, Decedent's alleged exposures to Defendants' products occurred shipboard and therefore fall under maritime law . . . ." Rep. at 11. Yet Defendants' argument merely highlights why dismissal of these claims is inappropriate at this stage: discovery remains ongoing, and Plaintiffs have not yet determined with certainty where Mr. Elorreaga's exposure took place. The Court therefore **DENIES** Defendants' motion to dismiss on this ground.

### IV. CONCLUSION

Accordingly, the Court **GRANTS** Defendants' motion to dismiss as to Plaintiffs' request

---

[5] To the extent one of the district court cases cited by Plaintiffs held that it could disregard *Miles* and *Smith* because of *Atlantic Sounding*, that case predated *Batterton*, and in any event the Court respectfully does not find its reasoning on this issue persuasive. *See Barrette*, 2011 WL 3516061, at *5–6.

9

for punitive damages and loss of consortium damages under general maritime law.  The Court **DENIES** the motion to dismiss Plaintiffs' California causes of action.  This order also terminates Dkt. No. 94.

**IT IS SO ORDERED.**

Dated: 7/7/2022

HAYWOOD S. GILLIAM, JR.
United States District Judge